Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000845
12-AUG-2014
09:34 AM

NOS. CAAP-12-0000845, CAAP-13-0000592, and CAAP-13-0001150

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

## CAAP-12-0000845

EGGS 'N THINGS INTERNATIONAL HOLDINGS PTE, LTD.,
a Singapore private limited company;
EGGS 'N THINGS JAPAN, K.K., a Japan company; and KOUTA MATSUDA,
Petitioners/Appellants/Cross-Appellees,
v.
ENT HOLDINGS LLC, a Hawai'i limited liability company,
Respondent/Appellee/Cross-Appellant

and

## CAAP-13-0000592

EGGS 'N THINGS INTERNATIONAL HOLDINGS PTE, LTD.,
a Singapore private limited company;
EGGS 'N THINGS JAPAN, K.K., a Japan company; and KOUTA MATSUDA,
Petitioners/Appellants/Cross-Appellees,
v.
ENT HOLDINGS LLC, a Hawai'i limited liability company,
Respondent/Appellee/Cross-Appellant

and

## CAAP-13-0001150

EGGS 'N THINGS INTERNATIONAL HOLDINGS PTE, LTD.,
a Singapore private limited company;
EGGS 'N THINGS JAPAN, K.K., a Japan company; and KOUTA MATSUDA,
Petitioners/Appellants/Cross-Appellees,
v.
ENT HOLDINGS LLC, a Hawai'i limited liability company,
Respondent/Appellee/Cross-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P. NO. 11-1-0620)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley and Reifurth, JJ.)

In three related appeals arising from the same civil case, (1) Petitioners/Appellants/Cross-Appellees Eggs 'N Things International Holdings PTE, Ltd. (**ENT International**), Eggs 'N Things Japan, K.K.(**ENT Japan**), and Kouta Matsuda (**Matsuda**) (collectively, **Eggs Petitioners**) appeal from the December 13, 2012 "Judgment Regarding Findings of Fact and Conclusions of Law and Order Partially Granting Petitioner's Motion for Order Confirming Partial Final Decision and Award of Arbitrator, Dated July 15, 2011, and Final Decision and Award of Arbitrator (Fees and Costs)" (**Judgment**); (2) Respondent/Appellee/Cross-Appellant ENT Holdings, LLC (**ENT Holdings**) cross-appeals from the same Judgment and the October 5, 2012 "Findings of Fact and Conclusions of Law and Order Partially Granting Petitioners' Motion for Order Confirming Partial Final Decision and Award of Arbitrator, Dated July 15, 2011, and Final Decision and Award of Arbitrator (Fees and Costs)" (**FOFs/COLs/Order**); and (3) Eggs Petitioners appeal from the circuit court's April 30, 2013 "Final Judgment Re Memorandum Opinion and Order Partially Granting Petitioners' Motion for Fees and Costs, Filed February 15, 2013" (**April 30, 2013 Judgment**).  ENT Holdings filed its cross-appeal from the April 30, 2013 Judgment on May 10, 2013.  The judgments and order were entered in the Circuit Court of the First Circuit[1] (**circuit court**).  On August 22, 2013, this court filed its order consolidating appeals in case nos. CAAP-13-0000592 and CAAP-13-0001150[2] under case no. CAAP-13-0000592.

On appeal, Eggs Petitioners contend the circuit court erred by:

(1) modifying (reducing) and/or vacating the arbitrator's award of damages and fees by cutting the hourly rates approved by the arbitrator without any basis;

(2) vacating the arbitrator's award of $181,570.63 for

_____

[1]     The Honorable Patrick W. Border presided.

[2]     Case nos. CAAP-12-0000845 and CAAP-13-0001150 were previously consolidated under case no. CAAP-13-0001150 by this court's order entered January 15, 2013.

2

the Venture Counsel Law firm's fees in its entirety without any basis; and

(3) reducing the hourly rates requested by Eggs Petitioners for their attorneys and a paralegal in awarding them fees and costs incurred in the circuit court proceedings.

On cross-appeal, ENT Holdings contends the circuit court erred by:

(1) denying their request to vacate the arbitrator's partial decision in part because the arbitrator exceeded his powers by awarding damages that were not measured by Eggs Petitioners' actual damages;

(2) denying their request to vacate the arbitrator's final decision in part because the arbitrator exceeded his powers by shifting fees incurred in a separate federal action;

(3) denying their request to vacate the arbitrator's fee award to Eggs Petitioners; and

(4) imposing liability on them for prejudgment interest on attorneys' fees and tax without reciting a factual basis for the award and which was not included of the arbitration award.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Eggs Petitioners' and ENT Holdings' appeals as follows.

The parties disagree as to whether the Federal Arbitration Act (**FAA**), 9 U.S.C. § 1-307 et seq. (2012), or Hawai'i's Uniform Arbitration Act, Hawaii Revised Statutes (**HRS**) Chapter 658A[3], governs the instant case. Effective March 21, 2009, Matsuda and ENT Holdings entered into an Eggs 'N Things License Agreement (**License Agreement**) under which Matsuda acquired rights to use the "Eggs 'N Things" brand in Japan and other Asian countries. Item no. 15 of the License Agreement

---

[3]     HRS Chapter 658A is based on the Revised Uniform Arbitration Act (2000), which was approved by the National Conference of Commissioners on Uniform State Laws in 2000 and revised the Uniform Arbitration Act that had been adopted in 1955. In re Arbitration Between United Pub. Workers, AFSCME, Local 646, AFL-CIO & City & Cnty. of Honolulu, 119 Hawai'i 201, 210, 194 P.3d 1163, 1172 (App. 2008), citing Unif. Arbitration Act (2000), 7 U.L.A. 1 (2005).

3

provided that Hawai'i state law and applicable federal law governed the License Agreement.

The "applicability of the FAA is the same with respect to state and federal claims and whether such claims are pursued in state or federal court." Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 235, 921 P.2d 146, 155 (1996). The parties' dispute specifically concerns the interpretation of the FAA provision that authorizes vacatur "when the arbitrators exceeded their powers[,]" 9 U.S.C. § 10, which is virtually identical to the provision in Hawai'i's arbitration law, requiring vacatur if an "arbitrator exceeded the arbitrator's powers[.]" HRS § 658A-23(a)(4) (Supp. 2013).[4]

---

[4] HRS § 658A-23 (Supp. 2013) provides:

§658A-23 Vacating Award (a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:

(1)  The award was procured by corruption, fraud, or other undue means;

(2)  There was:

(A)  Evident partiality by an arbitrator appointed as a neutral arbitrator;

(B)  Corruption by an arbitrator; or

(C)  Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(3)  An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 658A-15, so as to prejudice substantially the rights of a party to the arbitration proceeding;

(4)  An arbitrator exceeded the arbitrator's powers;

(5)  There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 658A-15(c) not later than the beginning of the arbitration hearing; or

(6)  The arbitration was conducted without proper notice of the initiation of an arbitration as required in section 658A-9 so as to prejudice substantially the rights of a party to the arbitration proceeding.

(Emphasis added.)

4

We conclude that HRS Chapter 658A provides the applicable standards for reviewing the circuit court's rulings on the parties' motions in support of and in opposition to the vacation of the award. We construe the License Agreement as applying Hawai'i law and conclude that there are no material differences between the FAA and HRS Chapter 658A as applied to this case. Inasmuch as ENT Holdings cites federal authorities, we may use those authorities to guide our interpretation of substantially similar provisions of HRS § 658A-23. Use of federal precedent to aid the interpretation of State laws "makes sense where the statutory language is the same or similar in all relevant respects." Bombardier Transp. (Holdings) USA Inc. v. Dir., Dep't of Budget & Fiscal Servs., City & Cnty. of Honolulu, 128 Hawai'i 413, 419, 289 P.3d 1049, 1055 (App. 2012) (citing Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawai'i 489, 507 n. 33, 146 P.3d 1066, 1084 n. 33 (2006)).

A.   ENT Holdings' Cross-Appeal

ENT Holdings contends the arbitrator disregarded the scope of his powers under the License Agreement and established law "by awarding a remedy that was not measured by [Eggs Petitioners'] 'actual damages.'" The License Agreement provided "[t]he arbitral tribunal shall not be empowered to award any form of punitive damages or any other remedy not measured by the prevailing party's actual damages . . . ." "Actual losses or damages are those that are real and substantial as opposed to speculative." McLellan v. Atchison Ins. Agency, Inc., 81 Hawai'i 62, 66, 912 P.2d 559, 563 (App. 1996) (citation, internal quotation marks and brackets omitted).

The arbitrator found ENT International established it would likely have "open[ed] at least one additional licensed restaurant but for the negative publicity created by the Disclaimer[5] and the uncertainty of its rights created by the

---

[5]   In March 2008, ENT Holdings acquired the Eggs 'N Things restaurant located in Waikiki (Waikiki Restaurant) and licensed FB Innovation Hawai'i, Inc. (FB Innovation) to operate the restaurant. On or around May 15, 2010, FB Innovation placed the following "Disclaimer" on the website www.eggsnthings.com and at the Waikiki Restaurant:

(continued...)

5

Default Letter[,[6]]" and based the award on the average monthly revenues of the existing restaurant in Harajuku, Japan (**Harajuku Restaurant**), the length of time it would have taken to open the prospective restaurant, and the royalties to be paid to ENT International. Other than fees and costs incurred in the federal action, the arbitrator rejected ENT Japan's claim for damages, but found "more compelling" ENT International's argument that "but for such wrongful actions by [ENT Holdings], ENT International would have been able to establish, operate and generate profits from one or more additional restaurants . . ., although requiring considerable speculation," and provided further discussion in Part X of the decision. In Part X, which addressed business defamation and commercial disparagement claims, the arbitrator stated "the profits that could have been realized from [opening additional franchised restaurants were] somewhat speculative - not all restaurant outlets prove profitable, and there is no certainty that the performance of the first restaurant . . . would be as great for the Harajuku Restaurant . . . ." Because the second restaurant's lost profits were "speculative," the arbitrator instead decided to measure the loss to ENT International through the "loss of franchise fees that would have accrued to ENT International in licensing a second location . . . ." (Emphasis added.) The arbitrator then

---

[5] (...continued)

> 1) This [Waikiki Restaurant] is unaffiliated with the Eggs 'N Things in Harajuku, Japan.

> 2) Authentic retail items and merchandise sold at the [Waikiki Restaurant], such as its pancake mix, can only be purchased at the [Waikiki Restaurant] or online at www.eggsnthings.com.

[6] On January 20, 2010, ENT Holdings sent Christopher Evans (**Evans**), Matsuda's attorney, a letter (**Default Letter**) stating that "the current plans to open the Japan restaurant in February constitute a breach of the License Agreement . . . due to [Matsuda's] failure to adequately train his cooks and to create menu items consistent with ENT's image." The Default Letter contained a proposal under which Matsuda would: (1) have three cooks train in Hawai'i for 89 days, followed by successive 89 day periods to train three cooks at a time to a skill level that satisfied the Waikiki Restaurant's head cook; (2) conduct a 200-subject blind taste-test comparing pancake mixes from Matsuda's restaurant with those used in the Waikiki Restaurant, yielding at least 90% of respondents preferring Matsuda's pancake mix or considering it equal to the Waikiki Restaurant's mix; and (3) have no restaurant open in Japan until at least nine cooks were trained and accepted and the blind taste-test was completed with required results.

enumerated "assumptions" upon which he based his award of royalties to ENT International.

ENT Holdings' contention that ENT International's inability to open a second restaurant could not constitute evidence of actual damages concerns the arbitrator's <u>interpretation</u> of "actual damages," which he understood included the loss of franchise fees from the prospective restaurant. Even if the arbitrator misinterpreted the legal term "actual damages," this alleged misinterpretation would not constitute reversible error. <u>See</u> <u>Tatibouet v. Ellsworth</u>, 99 Hawai'i 226, 239, 54 P.3d 397, 410 (2002);[7] <u>Daiichi Hawai'i Real Estate Corp. v. Lichter</u>, 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003) ("[W]here the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact." (Citation, internal quotation marks and brackets omitted.))

Nor does ENT Holdings show the arbitrator "intentionally and plainly disregarded" relevant substantive law by awarding in favor of ENT International for prevailing on its business defamation claim. <u>Ventress v. Japan Airlines</u>, 603 F.3d 676, 679 (9th Cir. 2010) <u>interpreting</u> HRS § 658A-23(a)(4) (providing that a court shall vacate an arbitration award if an arbitrator exceeded its powers).

ENT Holdings also fails to show that the arbitrator exceeded his powers by "shifting fees incurred in the separate federal action." The arbitrator stated, "because they were incurred as a result of the breach of the License Agreement by [ENT Holdings], the costs and reasonable legal fees incurred in obtaining the [federal] Injunction may be sought as part of such application." Item No. 12.5 of the License Agreement, titled

---

[7] <u>Tatibouet</u> refers to HRS §§ 658-9 and 658-10, both of which were repealed in 2001 when the Hawai'i Legislature adopted the Uniform Arbitration Act. <u>See</u> 2001 Haw. Sess. Laws Act 265 §§ 23 and 24 at 817-18. The former § 658-8 (Award and Confirming Award) was split into § 658A-19 (Supp. 2013) and § 658A-22 (Supp. 2013), § 658-9 (Vacating Award) is now § 658A-23, and § 658-10 (Modifying or Correcting Award) is now § 658A-24 (Supp. 2013). This court has applied case law interpretations of HRS Chapter 658 to these successor provisions. <u>See</u> <u>Carrillo v. Re/Max Kaua'i</u>, No. CAAP-11-0000061 (App. May 3, 2012) (mem.).

"Arbitral Tribunal," provided "[t]he arbitration award may award reasonable attorneys' fees to the prevailing party[,]" and did not expressly restrict the award of attorneys' fees to those incurred before the arbitration tribunal. The arbitrator interpreted the License Agreement to permit legal fees incurred by ENT International's litigation of its contract breach claim in the federal case as actual damages. Although ENT Holdings phrases its contention against the arbitrator's award of attorneys' fees as an act in excess of his powers, its contention amounts to a claim that the arbitrator erred by misinterpreting the License Agreement and/or by applying it to the parties' claims and thus raises no reversible error.

ENT Holdings also fails to support its contention that the arbitrator exceeded his powers by manifestly disregarding law governing attorneys' fees. ENT Holdings does not directly challenge the "reasonableness" of the arbitrator's award of attorneys' fees, but instead contends the arbitrator exceeded his authority by disregarding the law governing the award of reasonable attorneys' fees provided by the License Agreement.

The circuit court recognized applicable law governing whether awarded attorneys' fees were "reasonable" in the following cases: Hensley v. Eckerhart, 461 U.S. 424 (1983), Sound v. Koller, 2010 WL 1992198 (D. Hawaiʻi 2010), Blake v. Nishimura, 2010 WL 1372420 (D. Hawaiʻi 2010) (cited in Koller), and McMillon v. Hawaiʻi, 2011 WL 744900 (D. Hawaiʻi 2011) (cited in Koller). The arbitrator's decision on duplicate billing referred to Koller and "both of the cases cited in Koller[.]" The arbitrator also cited Hensley to determine that principal issues were decided in favor of ENT International and ENT Japan and to reject "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." (Hensley, 461 U.S. at 428, quoting No. 75-CV-87-C at 7 (WD Mo. Jan. 23 1981), Record 220 (internal quotation marks omitted)).

ENT Holdings contends "the arbitrator here identified the correct law and then decided not to apply it." According to ENT Holdings, because Eggs Petitioners did not prevail in all of their claims, the arbitrator was required to engage in a Hensley

analysis "to determine whether it is reasonable to award [attorneys'] fees for the entire time the plaintiff's counsel spent on the case." (Citing <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawaiʻi 408, 32 P.3d 52 (2001)). <u>Hensley</u> stated that determining attorneys' fees in a given case involves "what essentially are factual matters" and is better left to the original fact finder. <u>Hensley</u>, 461 U.S. at 436. "There is no precise rule or formula for making these determinations [of reasonable attorney fee awards]." <u>Hensley</u>, 461 U.S. at 436. <u>Hensley</u> requires a court to "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." <u>Hensley</u>, 461 U.S. at 437.

The arbitrator explained that although Eggs International and Eggs Japan did not sustain all of their claims (and noting that ENT Holdings did not prevail on any of its claims), he would "not significantly discount such [attorneys'] fees on the theory that [Eggs International and Eggs Japan] did not prevail on some arithmetic count of their claims." The arbitrator cited the following passage from <u>Hensley</u>, 461 U.S. at 435 (citation omitted):

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

The arbitrator found "the principal issues were each decided in favor of [Eggs International and Eggs Japan]" and it was not "necessarily significant that a prevailing plaintiff did not receive all the relief requested" because in light of <u>Hensley</u>, "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." (Quoting <u>Hensley</u>, 461 U.S. at 435 n.11.) The arbitrator concluded that the parties' case was one in which an award of attorneys' fees, "unless otherwise prohibited in the License Agreement" was appropriate. The arbitrator did not act in excess of his powers and the circuit court did not err by affirming the arbitrator's decision to award

attorneys' fees to Eggs Petitioners, but the circuit court's modification of the attorneys' fees and costs award is a separate issue, as discussed infra.

ENT Holdings contends the circuit court erred by awarding prejudgment interest on attorneys' fees running from July 25, 2011, the date of the arbitrator's "partial decision," in favor of Eggs Petitioners because the arbitrator did not specify a final awarded amount until October 10, 2011, when he issued his "Final Decision and Award of Arbitrator (Fees and Costs)" (**Final Decision**). ENT Holdings further contends that interest should accrue only on the specific amount awarded in the July 25, 2011 Partial Decision and not the attorneys' fees and costs that the arbitrator ruled Eggs Petitioners were entitled to recover in the Partial Decision but were not quantified until issuance of the Final Decision.

The circuit court did not have authority to award prejudgment interest for a period commencing before entry of the arbitration award, but the arbitrator was authorized to impose interest as part of his award and did so by including a clause in the Partial Decision that referred to July 25, 2011 as the date of accrual of interest and the "Award." See Kalawaia v. AIG Hawai'i Ins. Co., 90 Hawai'i 167, 173, 977 P.2d 175, 181 (1999). The "Award" included both the $94,500 in "monetary damages" to ENT International and "an award of reasonable attorneys' fees and costs in amounts to be hereafter established pursuant to the [Dispute Prevention & Resolution] Rules of Arbitration." We conclude that the circuit court did not err in confirming the arbitrator's award of interest accruing from July 25, 2011 on the amounts the arbitrator awarded, which included amounts awarded for attorneys' fees and costs.

B. Eggs Petitioners' Appeal

Eggs Petitioners contend the circuit court lacked the authority to reduce the arbitrator's award of contract damages and fees or to vacate the award of fees for the work done by Evans, the attorney who negotiated the License Agreement for Matsuda. The circuit court concluded, "[n]o cause exist[ed] to vacate the arbitration award pursuant to [HRS] § 658A-23" and

10

proceeded to grant Eggs Petitioners' motion for confirmation "with modifications to the hourly rates of attorneys and support staff."

A court may vacate an arbitration award only on the six grounds specified in HRS § 658A-23(a) and may modify or correct an award only on the three grounds specified in HRS § 658A-24 (Supp. 2013).[8] See Kona Village Realty, Inc., v Sunstone Realty Partners XIV, LLC, 121 Hawai'i 110, 113, 214 P.3d 1100, 1103 (2009). In addition to statutory grounds for vacating or modifying an award, a court may refuse to confirm an award: "one, to allow remand to the arbitrator to clarify an ambiguous award; another, to allow vacation of an arbitration award clearly violative of public policy." Gepaya v. State Farm Mut. Auto. Ins. Co., 94 Hawai'i 362, 365, 14 P.3d 1043, 1046 (2000) (internal citation omitted).

The circuit court did not indicate grounds in HRS § 658A-24 for its "modification[]" of the arbitrator's award of attorneys' fees, including those allocated to Evans, and we discern none. The circuit court appears to have vacated in part the arbitrator's award. As discussed in regard to ENT Holdings' appeal, supra, the arbitrator's decision did not present grounds for vacatur under HRS § 658A-23. Nor did the circuit court cite public policy grounds as a basis for modifying the arbitrator's

---

[8] HRS § 658A-24 provides in part:

§ 658A-24 Modification or correction of award. (a) Upon motion made within ninety days after the movant receives notice of the award pursuant to section 658A-19 or within ninety days after the movant receives notice of a modified or corrected award pursuant to section 658A-20, the court shall modify or correct the award if:

(1) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;

(2) The arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or

(3) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

award.

By contrast, the circuit court's April 30, 2013 Judgment awarded Eggs Petitioners' attorneys' fees and costs for the circuit court proceedings and did not modify or "correct" the arbitration award itself.[9] The circuit court reviewed HRS § 607-9 (1993),[10] HRS § 658A-25(c) (Supp. 2013), and related case law in determining reasonable attorneys' fees and costs; adopted hourly rates for Eggs Petitioners' counsel already determined to be reasonable in the FOFs/COLs/Order; reviewed case law clarifying "block billing[;]" and found Eggs Petitioners' counsels' partial block billing did not warrant reduction of attorneys' fees; and issued specific findings regarding costs, fees, services, and reasonable hourly rates for Eggs Petitioners' attorneys and paralegals. The circuit court's findings, application of relevant law, and award of attorneys' fees and costs to Eggs Petitioners in the April 30, 2013 Judgment did not constitute an abuse of discretion. See Enoka v. AIG Hawaii Ins. Co., Inc., 109 Hawai'i 537, 544, 128 P.3d 850, 857 (2006) (a trial court's grant or denial of attorneys' fees and costs are reviewed under the abuse of discretion standard).

Therefore,

IT IS HEREBY ORDERED that the December 13, 2012 "Judgment Regarding Findings of Fact and Conclusions of Law and Order Partially Granting Petitioner's Motion for Order Confirming Partial Final Decision and Award of Arbitrator, Dated July 15,

---

[9] The circuit court's April 30, 2013 Judgment was based on the Memorandum Opinion and Order Partially Granting Petitioner's Motions for Fees and Costs, filed February 15, 2013.

[10] HRS § 607-9, provides:

§607-9 Cost charges exclusive, disbursements. No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

2011, and Final Decision and Award of Arbitrator (Fees and Costs)," entered in the Circuit Court of the First Circuit is affirmed in part and vacated in part to reflect confirmation of the Partial Final Decision and Award and an award in the amount specified by the arbitrator's Final Decision and Award, including the arbitrator's award of interest.  The April 30, 2013 "Final Judgment Re Memorandum Opinion and Order Partially Granting Petitioners' Motion for Fees and Costs, Filed February 15, 2013," also entered in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, August 12, 2014.

On the briefs:

Paul Alston
Glenn T. Melchinger
(Alston Hunt Floyd & Ing) for
Petitioners/Appellants/Cross-
Appellees.

Kelly G. LaPorte
Calvert G. Chipchase
(Cades Schutte) for
Respondent/Appellee/Cross-
Appellant.

Chief Judge

Associate Judge

Associate Judge